The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIELLE LLERA,<br><br>               Plaintiff,<br><br>    v.<br><br>TECH MAHINDRA (AMERICAS) INC., a<br>Delaware Corporation,<br><br>               Defendant. | NO.  2:19-cv-00445-RSL<br><br>**PLAINTIFF'S MOTION TO COMPEL<br>DEFENDANT'S RESPONSES TO<br>PLAINTIFF'S DISCOVERY<br>REQUESTS**<br><br>**NOTICE ON MOTION CALENDAR:**<br>Friday, January 22, 2021 |

PLAINTIFF'S MOTION TO COMPEL - 1

BEAN LAW GROUP
2200 6TH Ave, Ste 500
Seattle, WA 98121
(206) 522-0618

# I.   INTRODUCTION

Plaintiff Danielle Llera ("Llera") seeks an order compelling Defendant Tech Mahindra (Americas) Inc. ("TMA") to respond certain of Plaintiff's interrogatories and requests for production of documents.  Llera bring suit for race/national origin discrimination and for unpaid commissions.  TMA recruited Llera specifically because of her knowledge and experience with a prospective client – T-Mobile.  Once she had "opened the door" and made a very large sale, TMA began to marginalize her and execute a plan to replace her with an Indian employee. After ignoring Llera's repeated requests for ten months about her commission status and never being paid, Llera tendered her resignation and was terminated during her notice period.

TMA has refused to provide Llera discovery a significant amount of requested discovery regarding (1) Llera's comparators who did receive commission payments; (2) other individuals who have made complaints of race or national origin discrimination, (3) information related to the racial characteristics of TMA—information which it is required to keep by law, and (4) financial information related to Llera's claim for punitive damages.  Therefore, this Motion is necessary.

# II.   FACTUAL BACKGROUND

A. <u>Facts Leading to Llera's Claims for Discrimination and Unpaid Commissions</u>

Llera brings claims for race discrimination and failure to pay wages. Tech Mahindra (Americas) Inc. is a U.S. subsidiary of Tech Mahindra Ltd., a company headquartered in India. The workforce in the United States is predominantly Indian.  Llera is white.

Llera was recruited to join TMA as a client partner with T-Mobile due to her strong professional connections within T-Mobile.  Llera contends that she was recruited in large part because of her race, white as TMA believed, institutionally, that it had a "diversity challenge", due to the company predominantly employing Indian nationals and that United States clients

PLAINTIFF'S MOTION TO COMPEL - 2

BEAN LAW GROUP
2200 6TH Ave, Ste 500
Seattle, WA 98121
(206) 522-0618

preferred to see more white people.  (Thawani Dep.[1] Vol. I 64:5-14.)  In fact, a second white person (on the 19-member TMA team) was retained on the deal Llera was pursuing, for the sole reason that he was white, in order to present as more "diverse" to T-Mobile.  (Thawani Dep. Vol. I 62:20-65:24.)

In December 2016, TMA was able to secure a large contract with T-Mobile (the "████████ project).  In less than 18 months, TMA's contracted business with T-Mobile increased from less than ██████████████ to more than ████████████████.  (Mohan Dep.[2] 17:7-10; Thawani Dep. Vol. II 110:10-15.)  After the agreement was reached, Llera's manager, Nitin Mohan, gave instructions to keep the specific terms of the deal secret from Llera.  (Fenton Exhibit G.)  Furthermore, less than three months after the deal was finalized, Llera's supervisor put a plan in place to replace Llera with an Indian —a plan he kept secret from Llera.  (Llera Decl. ¶ 5; Fenton Exhibit H.)

Starting immediately after the ████████ project was won in December 2016, Llera made repeated requests to learn the amount of her commission and when she could expect to be paid. (Llera Decl. ¶ 3.)  Depending on how the contract was characterized and the financials of the contract, the commission could have been ██████ per year, or limited to ████████████ ██████████████████.  (Llera Decl. ¶ 4.)  TMA stonewalled Llera's inquiries and refused to respond with any information.  (Llera Decl. ¶ 3.)  Then, a TMA vice-president confidentially told Llera that Nitin Mohan wanted to replace her with another Indian national. (Llera Decl. ¶ 5.)  For these reasons, Llera made the decision to resign and avoid further humiliation and frustration.  (Llera Decl. ¶ 5.)

---

[1] Excerpts of the Deposition of Sandeep Thawani are attached as Exhibit E to the Declaration of Cody Fenton-Robertson ("Fenton Exhibit E").
[2] Excerpts of the Deposition of Nitin Mohan are attached as Fenton Exhibit F.

PLAINTIFF'S MOTION TO COMPEL - 3

B.  <u>Llera's Attempts to Obtain Discovery from TMA.</u>

It has been a struggle for Llera to obtain requested discovery in this case.  Llera filed her case in King County Superior court in March 2019, and TMA removed the case to this Court.  Llera served discovery requests on July 9, 2019.  (ECF #37, p. 1, ¶ 2.)  TMA objected to responding to discovery requests until the Court ruled on Llera's motion for remand (which was denied on July 30, 2019, ECF #22).  (*Id*.)  It wasn't until April 10, 2020 that Tech Mahindra ultimately provided complete responses to these document requests.

In July 2020, the parties agreed to table discovery for two months to explore a negotiated settlement.  (Declaration of Cody Fenton-Robertson, ¶ 2 (hereafter "Fenton Decl.")).

On October 9, 2020, Llera's counsel served TMA with her third set of discovery requests.  At the same time, her counsel wrote to TMA's counsel to address remaining discovery deficiencies.  (Fenton Decl. ¶ 3.)  Thirty days later, on November 9, TMA served its objections and declined to provide any substantive answers to any of the requests.  (Fenton Exhibit B.)  TMA also did not respond to any of the issues in the letter that accompanied the discovery requests.  (Fenton Decl. ¶ 3.)

The parties conferred on November 11, 2020, on December 7, 2020, and again on January 4, 2021.  (Fenton Decl. ¶ 4.)  On December 2, 2020, TMA served amended answers to Plaintiff's First Discovery Requests and wrote a letter responding to many of the issues raised by Llera's counsel regarding the Third Discovery Requests and other remaining discovery issues.  (Fenton Exhibit C, Fenton Exhibit D.)

The parties agree that the continuing discovery disputes have been discussed in good faith during conferences and that the parties are not able to reach an agreement on how to address these issues without motion practice.  (Fenton Decl. ¶ 4.)

PLAINTIFF'S MOTION TO COMPEL - 4

BEAN LAW GROUP
2200 6TH Ave, Ste 500
Seattle, WA 98121
(206) 522-0618

### III.    ISSUES PRESENTED

Whether an order compelling discovery should be issued.

### IV.    LEGAL ARGUMENT

**A.    Standard for Motion to Compel**

Information is discoverable under revised Rule 26(b)(1) if it is relevant to any party's claim or defense and is proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  If a requested disclosure or response is not made, the requesting party may move for an order compelling such disclosure.  Fed. R. Civ. P. 37(a)(3).  Fed. R. Civ. P. 37(a) authorizes this Court to require TMA to produce information or materials discoverable under Rule 26(b)(1).

**B.    Deficient and/or Disputed Discovery Responses**

**1.    Interrogatory No. 2** asks TMA to identify "each commission or bonus paid to any [TMA] employee on the ███████ project".  In TMA's most recent amended answer to this interrogatory, it has identified five total TMA employees who received commissions on the ███████ project.  (Fenton Exhibit C, pp 7-9.)  However, during depositions, it has been established that at least two other TMA employees received incentive pay related to ████████ Nitin Mohan and Sandeep Thawani.  (Thawani Dep. Vol. I 10:20-22; Mohan Dep. 138:21-139:15   This answer is clearly incomplete and TMA should be ordered to provide a complete answer.

**2.    Interrogatory No. 9 (and Request for Production No. 9)** ask TMA to identify and produce "all complaints made to any court, or local, state or federal agency, regarding race and/or national origin discrimination against [TMA] that were made, investigated, or litigated at any time from January 1, 2014 to January 1, 2019."  TMA has steadfastly refused to answer this interrogatory and its associated request for production.  (Fenton Exhibit C, pp 14-16, Fenton Exhibit D, pp 2-3.)

PLAINTIFF'S MOTION TO COMPEL - 5

Washington courts have repeatedly upheld requests for "me too" evidence of discrimination.  *See, e.g.*, *Brundridge v. Fluor Fed. Servs., Inc.*, 164 Wn.2d 432 (2008) (unproven allegations of wrongdoing against other persons *by other managers* are admissible to show the employer's motive or intent); *Hume v. American Disposal Co.*, 124 Wn.2d. 656, 666 (1994) (testimony of nonplaintiff former employees relevant to the issues of employers' "intent, plan, and pattern regarding the alleged harassment").  *See also* Order Denying Defendant's Motion for a Protective Order, *Bartholomew v. Microsoft Corp.*, No. 10-2-06886-4 SEA (King Cnty. May 21, 2010) (Judge Douglass North's order denying Microsoft's attempt to stop discovery into other Microsoft employees who made similar complaints).  In addition, the subject matter limits in this request are sufficient.  ("The complaints, lawsuits, etc. must be similar to plaintiff's allegations. Accordingly, the proper scope of the complaints is those involving FMLA interference, disability discrimination, failure to accommodate, and retaliation.")  *Walech v. Target Corp.*, 2012 U.S. WL 1068068, at *8 (W.D. Wash. Mar. 28, 2012).  Furthermore, unlike the employer in *Walech* where there were discrete Target stores managed under a particular executive, TMA does not operate in such a manner.  Most of the witnesses in this matter resided outside of Washington —including many in India, with others residing in New Jersey, Texas, and elsewhere in the United States.  It would be impossible to limit the scope of any request to any particular geographic location.   This is information that is known only to TMA, and it is reasonably calculated to lead to the discovery of admissible evidence, including whether there is a "pattern or practice" of retaining individuals for the purpose of winning contracts by presenting as more "diverse".    Therefore, Interrogatory No. 9 and Request No. 9 require answers and responses.

    **3.**     **Interrogatory Nos. 12, 13, and 14** ask TMA to identify the total number of people that TMA employed in the United States in 2018; the total number of managerial and

BEAN LAW GROUP
2200 6TH Ave, Ste 500
Seattle, WA 98121
(206) 522-0618

supervisors employed by TMA in the United States in 2018 (and to identify their race/national origin); and the total number of individuals employed by TMA in 2018 in the United States as Client Partners (and to identify their race/national origin). TMA objected and refused to answer these interrogatories based on its assertion that the inquiries are not "relevant" to Llera's claims. (Fenton Exhibit B, pp 6-8.) For Interrogatories 13 and 14, it also objected on the basis of the requests being "overbroad" and "unduly burdensome".

First, the requests are relevant and are reasonably calculated to lead to the discovery of admissible evidence. Llera was terminated in fiscal year 2018. Her suit includes claims that she was discriminated against on the basis of race and/or national origin. This claim is based *in part* on the fact that TMA is a company located in the United States and which employs a large number of people in this country, yet the vast majority of people it employs are of Indian ancestry. These three interrogatories are reasonably calculated to lead to admissible evidence as to whether TMA used Llera's race and/or national origin in any decision is made regarding her employment and/or compensation. Statistical evidence is admissible in discrimination cases. *Lowe v. City of Montovia*, 775 F.2d 998, 1007 (9th Cir. 1985) (a disparate treatment plaintiff may rely on statistical evidence to establish a prima face case or to rebut an employer's proffered evidence of non-discrimination as pretext).

Second, relevance is not a valid objection under Fed. R. Civ. P. 26(g).

Third, there is no reason these interrogatories should be unduly burdensome for TMA to answer, as TMA was already required under federal law to compile and file this very information with the EEOC by filing EEO-1 forms. *See* 42 U.S.C. § 2000e-8(c); 29 C.F.R. §§ 1602.7, 1602.12, 1602.13.[3] There is little burden to providing Llera with information it should

---

[3] TMA's counsel has declined to respond to plaintiff's counsel's inquiry whether these EEO-1 forms have ever been filed with the EEOC. (Fenton Decl. ¶ 5.)

PLAINTIFF'S MOTION TO COMPEL - 7

BEAN LAW GROUP
2200 6TH Ave, Ste 500
Seattle, WA 98121
(206) 522-0618

1    have already compiled in order to comply with federal law, and if it has not, it cannot be

2    considered to be an "undue" burden to compile information that is required to be kept by law.

3           For these reasons, TMA should be ordered to provide answers to these interrogatories.

4           **4.      Interrogatory No. 15 (and Request for Production Nos. 16 and 17)** ask TMA

5    to "[d]escribe in detail the current valuation of [TMA] and the factual basis for that valuation";

6    to produce copies of all Income Statements for 2019 and 2020; and to produce copies of all

7    Cash Flow Statements for 2019 and 2020.  TMA objected and refused to answer or respond to

8    these requests.  (Fenton Exhibit B, pp 8-10.)

9           Llera seeks punitive damages as to her § 1981 claim.  "If punitive damages are

10   warranted, they should not result in the financial ruin of the defendant or constitute a

11   disproportionately large percentage of a defendant's net worth."  *Sooroojballie v. Port. Auth of*

12   *N.Y. & N.J.*, 816 F. App'x 536, 549 (2d Cir. 2020) (citing *Vasbinder v. Scott*, 976 F.2d 118, 121

13   (2d Cir. 1992)) (internal quotation marks omitted).[4]  In order for the jury to consider the

14   valuation of any punitive damages award, it will be necessary for it to be presented with the

15   present valuation of the company, or else the punitive damages award might be a

16   disproportionately large percentage of TMA's net worth.  Therefore, this request is entirely

17   appropriate and TMA should be ordered to answer.

18          **5.      Request for Production Nos. 14** asks for "copies of all documents in [TMA's]

19   possession that reflect or describe the racial or ethnic composition of its workforce for" 2016

---

[4] S*ee also Fish LLC v. Harbor Marine Maint. & Supply*, No. C17-0245-JCC, 2018 WL 1121332, at
*3 (W.D. Wash. Mar. 1, 2018) (granting motion to compel regarding requests for defendant's financial
information relevant to the plaintiffs' exploration of punitive damages); *E.E.O.C. v. DiMare Ruskin, Inc.*,
No. 2:11-cv-158-FtM-36SPC, 2011 WL 3715067, at *3-4 (M.D. Fla. Aug. 24, 2011) (granting motion to
compel production of documents relating to punitive damages, including "all documents reflecting the
gross income, net income and expenditures" and "all cash flow statements"); *Thomsen v. Naphcare, Inc.*,
No. 3:19-cv-00969-AC, 2020 WL 1441682, at *5-7 (D. Or. Mar. 24, 2020) (granting similar motion to
compel); *Hannah v. Armor Corr. Health Serv.*, No. 8:19-cv-596-T-60SPF, 2020 WL 3895369, at *2-3
(M.D. Fla. Jul. 10, 2020) (granting similar motion to compel).

PLAINTIFF'S MOTION TO COMPEL - 8

BEAN LAW GROUP
2200 6TH Ave, Ste 500
Seattle, WA 98121
(206) 522-0618

through 2020.  The request specifically includes any EEO-1 Reports completed during that time.  Again, TMA objected and has refused to produce any responsive documents.  (Fenton Exhibit B, pp 8-8.)  For the same reasons articulated above regarding Interrogatory Nos. 12, 13, and 14 (in Section IV-3), TMA should be ordered to produce these documents.  These documents will contain information that will demonstrate the TMA's preference for employing Asians and/or persons of Indian descent.

6.      **Request for Production No. 15** asks for "copies of all communications sent by or on behalf of any current or former employee of [TMA] raising concerns relating to race discrimination or failure to pay wages since January 1, 2015".  This is essentially an extension of Request for Production No. 9 (discussed in Section IV-2), seeking to include complaints that were not formally filed in a court or with an agency, but may exist in demand letter form.  For the same reasons articulated in Section IV-2, TMA should be ordered to produce responsive documents.

7.      **Request for Production No. 19** asks for all electronic communications sent to or from Dr. Satish Pai, between March 1, 2017, and October 31, 2017, that include either of the search terms "Danielle" and/or "Llera".  Llera was told by Thawani that the reason she wasn't paid her commission was because she was not in Dr. Pai's "good books."  (Llera Decl. ¶ 6.)  A search in his email for email that contains "Danielle" or "Llera" in the subject line or body of the message would likely produce evidence as to why she was not paid or evidence about the plan to replace her with an Indian national.  TMA objected and refused to produce any documents in response to this request, in part because it says that, in producing documents from the prior email custodians, it already produced some emails to and from Dr. Pai.  (Fenton Exhibit B, pp 10-11.)  However, if Dr. Pai (who is a high-level executive at TMA) were communicating about Llera without including any of the five prior custodians on the

PLAINTIFF'S MOTION TO COMPEL - 9

BEAN LAW GROUP
2200 6TH Ave, Ste 500
Seattle, WA 98121
(206) 522-0618

communication, those emails would not have been produced.  After the meet and confer where this request was discussed, TMA's counsel argued that Llera "failed to explain why" she needs additional electronic discovery "at this stage in litigation".  (Fenton Exhibit D, p 5.)  Of course, the current "stage" of the litigation is the discovery stage, which is the appropriate time to seek document production.  This is a narrow request, limited to a narrow temporal scope and only requesting two search terms.  This request is reasonably calculated to obtain information regarding why Llera was not paid her commission and that TMA lacked a legitimate basis to withhold those wages.  TMA should be compelled to produce the responsive documents.

### V.    CONCLUSION

For the reasons set forth above, the Court should enter an order compelling TMA to respond to the requested discovery.

DATED: this _7th_ day of January, 2021:


BEAN LAW GROUP


_s/Cody Fenton-Robertson_
Matthew J. Bean, WSBA No. 23221
Cody Fenton-Robertson, WSBA No. 47879
Attorneys for Plaintiff



LAW OFFICES OF ALEX J. HIGGINS


_s/Alex J. Higgins_
Alex J. Higgins, WSBA No. 20868
Attorney for Plaintiff


PLAINTIFF'S MOTION TO COMPEL - 10