The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIELLE LLERA,<br><br>             Plaintiff,<br><br>  v.<br><br>TECH MAHINDRA (AMERICAS) INC., a Delaware Corporation,<br><br>             Defendant. | NO.  2:19-cv-00445-RSL<br><br>**PLAINTIFF'S MOTION FOR SANCTIONS FOR DEFENDANT'S FAILURE TO COMPLY WITH COURT ORDERS**<br><br>**NOTICE ON MOTION CALENDAR:**<br>Friday, February 11, 2022 |

PLAINTIFF'S MOTION FOR SANCTIONS - 1
2:19-cv-445 RSL

BEAN LAW GROUP
2200 6TH Ave, Ste 500
Seattle, WA 98121
(206) 522-0618

## I. INTRODUCTION

Plaintiff Danielle Llera seeks sanctions based on Defendant's failure to comply with this Court's Orders compelling responses to Llera's discovery requests. (*See* ECF #99, #101, and #102.) More than seven months have passed since this Court ordered Defendant to produce the requested discovery. Defendant has still not fully complied with those orders. The discovery cutoff has been moved to March 8, 2022. The trial is current set for June 6, 2022.

Despite assurances to Llera and the Court that Defendant would fully comply by January 7, 2022, it did not. Llera's counsel again conferred with defense counsel after the deadline. In response, Defendant provided supplemental responses on January 17, 2022. Counsel held yet another phone conference on January 18, 2022. In short, this motion is necessary because Defendant has: (a) reiterated objections that were specifically overruled by this Court; (b) obfuscated by directing Llera to cross-referencing discovery responses that are not responsive; and (c) refused to state whether documents ever existed and were destroyed, or never existed at all. This gamesmanship is improper and sanctions are now appropriate. Accordingly, Llera requests that this Court: (a) find that Defendant is in contempt of the June 2021 discovery orders, and (b) impose remedial sanctions as requested below.

## II. FACTUAL BACKGROUND

**A. Facts Leading to Llera's Claims for Discrimination and Unpaid Commissions**

In December 2016, Llera helped Tech Mahindra (Americas) Inc.'s ("TMA") secure a large contract with T-Mobile (the "Houlihan" project). In less than 18 months, TMA's business with T-Mobile increased from less than two million dollars to more than a hundred million dollars. (Mohan Dep. 17:7-10; Thawani Dep. Vol. II 110:10-15.)[1]

Llera is white and TMA's workforce in the US is predominantly Indian. Llera contends that she was recruited because TMA believed that it had a "diversity challenge" and that US

---

[1] The cited portions of these deposition transcripts, Nitin Mohan and Sandeep Thawani, are attached to the Fenton Decl. as Exhibit K and Exhibit L, respectively.

PLAINTIFF'S MOTION FOR SANCTIONS - 2
2:19-cv-445 RSL

BEAN LAW GROUP
2200 6TH Ave, Ste 500
Seattle, WA 98121
(206) 522-0618

1  companies preferred to see more white people. (Thawani Dep. Vol. I 64:5-14.) Indeed TMA
2  management admittedly brought on a second white person in a final "pitch" meeting just to
3  present as a more "diverse" team to T-Mobile.[2] (Thawani Dep. Vol. I 62:20-65:24.)
4      After the Houlihan project was won in December 2016, Llera made repeated requests to
5  learn the amount of her commission and when she could expect to be paid. (Llera Decl. ¶ 3.)[3]
6  TMA stonewalled Llera's inquiries and refused to respond with any information. *Id*. Then, a
7  TMA vice-president told Llera that Nitin Mohan wanted to replace her with another Indian
8  national. *Id*. at ¶ 5. Llera resigned to avoid further humiliation and frustration. *Id*. at ¶ 5.

9  **B.    TMA asserts that Houlihan fails to qualify as a "large deal".**

10      Through counsel, Llera pursued her unpaid commission under TMA's incentive plan.
11  That plan states, among other things: "█████████████████████████████
12  ████████████████████████████████████████████████████
13  ███████████████████". (Decl. of Cody Fenton-Robertson, Ex. J) (hereafter
14  "Fenton Decl.") (emphasis added). TMA claims that this Houlihan deal was not a "new pillar".
15  (Paryani Dep. 183:2-12.)[4]
16      Despite Llera's multiple direct requests and a Court order, TMA has produced *no*
17  *documents* that answer whether Houlihan was a new pillar. Llera sought clarifying information
18  regarding this subject, which TMA objected to and provided no substantive answers or
19  responses. The requests included:
20  - What are the definitions of the "5 pillars", and how does TMA determine which pillar a line of business falls within? (RFP No. 27.)

---

[2] It is unclear from what meager documents have been produced on this subject whether this individual, Mike Paquette, was hired for this purpose or if he was already engaged by TMA for another purpose and temporarily reassigned to Houlihan.

[3] All citations to the "Llera Decl." are in reference to the declaration filed on January 7, 2021, at ECF #48 (redacted) and ECF #52 (sealed).

[4] Harshul Asnani, a Senior VP for TMA, testified in his deposition that Houlihan was a "new pillar." (Asnani Dep. 41:23-42:15.) Still, TMA persists in its defense that it was not a "large deal."

PLAINTIFF'S MOTION FOR SANCTIONS - 3
2:19-cv-445 RSL

BEAN LAW GROUP
2200 6TH Ave, Ste 500
Seattle, WA 98121
(206) 522-0618

- What other T-Mobile contracts did TMA perform that were in the same "pillar" as Houlihan, and what documents exist that show to which pillars each project was assigned? (Interrogatory No. 18, RFP Nos. 25 and 26.)

The Court issued an Order to Compel on June 21, 2021. (ECF #101, p. 4-5.)

**C.     Despite Orders from the Court, TMA repeatedly delays discovery.**

After reviewing the entirety of TMA's supplemental production, it became clear that TMA had not answered Interrogatory Nos. 18, 19, 20, 21, 23, or 25, nor had it provided supplemental responses to Request for Production Nos. 25, 26, 27, or 33. (Fenton Decl. ¶ 7, Ex. E, pp 4-5.) In response to Llera's inquiries, TMA argued that it had answered those discovery requests based on its answers and responses to other discovery requests. (Fenton Ex. E, p 1.)[5] This is simply not true, as explained in more detail below.

Following that exchange, TMA served an additional set of supplemental discovery responses on January 17, 2022. (Fenton Ex. G.) These are deficient and, for the most part, reference wholly non-responsive information. In fact, every answer includes the same unhelpful and unresponsive assertions:

1. TMA incorporates all previous objections (which were specifically rejected by this Court);
2. TMA references the Supplemental Response to Request for Production No. 24;
3. TMA asserts that responsive information is produced at TM38385-TM38763 (which are the documents produced in response to RFP No. 24).

(Fenton Decl. ¶ 11.) The reiteration of the TMA's response to RFP No. 24 was responsive to Llera's request for copies of all contracts, master service agreements, and statements of work

---

[5] Per TMA's counsel, "We have produced information and documents that are responsive to more than one Rog/RFP at a time. Indeed, the Court orders address many of the requests in groups. To take up your example, Rog No. 18 is addressed by the Court jointly with Rog Nos. 19 and 21 and RFP Nos 24-27." However, only one of the discovery requests identified in that statement was supplemented by TMA. That request, RFP No. 24, sought documents between T-Mobile and TMA that described the nature of the prior lines of business. There is nothing in those documents that answers Llera's many questions as to the definition of "pillar", how it is applied generally, or how it was applied specifically to past T-Mobile lines of business.

PLAINTIFF'S MOTION FOR SANCTIONS - 4
2:19-cv-445 RSL

BEAN LAW GROUP
2200 6TH Ave, Ste 500
Seattle, WA 98121
(206) 522-0618

for all T-Mobile business that was conducted prior to Houlihan. Those documents, which are all various forms of contracts between T-Mobile and Houlihan, are responsive to *that* request. They do not address these other discovery requests at all. (Fenton Decl. ¶ 11.)

### III. LEGAL ARGUMENT

**A. General Considerations Under FRCP 37**

Under FRCP 37(b), when a party fails to comply with a discovery order, the court may issue "further just orders" which may include "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action" and "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence". FRCP 37(b)(2)(A). Where the sanctioned ordered is less than dismissal, such as the relief sought here, the party's noncompliance need not be proven to be willful or in bad faith. *Malone v. Washington*, No. 14-cv-05974-RBL-JRC, 2017 WL 2379672, at *2 (W.D. Wash. May 31, 2017) (citing *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 843-44 (9th Cir. 1976)); *see also R&R SAILS v. Insurance Co. of Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012) ("…because the sanction amounted to *dismissal* of a claim, the district court was required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith…") (emphasis added). Courts have "broad discretion in fashioning an appropriate sanction" and sanctions "may be imposed upon a party that has breached a discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106 (2d Cir. 2002).

Where sanctions are imposed to resolve a substantive issue in the case, the element of prejudice must be present. *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).

FRCP 37 authorizes this Court, "in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Wyle v. RJ Reynolds Indus.*, 709 F.2d 585, 589 (9th Cir. 1983). The sanctions sought by Llera in the present motion are expressly authorized under FRCP 37(b)(2)(A)(i)-(ii).

PLAINTIFF'S MOTION FOR SANCTIONS - 5
2:19-cv-445 RSL

BEAN LAW GROUP
2200 6TH Ave, Ste 500
Seattle, WA 98121
(206) 522-0618

Furthermore, the requested sanctions are carefully tailored to repair the prejudice suffered by Llera as a result of TMA's continued noncompliance with the Court's orders.

**B.    TMA's discovery responses regarding "pillars" are deficient and a curative sanction is warranted.**

According to TMA, its incentive plan contains a "large deal incentive" which depends on a sale representing a "new pillar" of business with that customer.  TMA has further asserted that Llera's efforts on the Houlihan pursuit did not qualify for a "large deal incentive" because it was not a "new pillar" for its business with T-Mobile.  (*See, e.g.*, Mohan Dep. 65:11-15; Fenton Ex. G, p 7 (answer to Interrogatory No. 19).)  While the incentive plan lists the names of the five pillars, it does not define them.  (Fenton Ex. J, p 17.)

Llera's sought discovery on the meaning of term "new pillar" as used by TMA.[6]  TMA refused, and Llera moved to compel and the Court ordered such discovery.  (*See* ECF #101, pp 4-5) ("[T]he calculation of those commissions depends in part on whether the Houlihan project represented a 'new pillar' of business with T-Mobile.  The information is therefore relevant, and defendant's objections are overruled.")

Following the Court's order, TMA has failed to provide responsive information. (Fenton Decl. ¶ 7, ¶¶ 9-11.)  Each of TMA's supplemental responses to discovery on this issue reiterated its previously overruled objects and references the same 379 pages of documents – which do not contain responsive information.  *Id*.  The documents are a compilation of contracts between TMA and T-Mobile, but fail to provide any information that would assist in determining if the contracts fall into the same "pillar" as Houlihan. (Fenton Decl. ¶ 10 (an itemized breakdown of the documents produced at TM39385-TM38763).). An example of a typical TMA response follows:

> **INTERROGATORY NO. 18:**  Please identify and describe all business that Tech Mahindra had with T-Mobile prior to the commencement of the Houlihan deal that it asserts were in the same "pillar" as Houlihan.  For line of business

---

[6] Interrogatory Nos. 18 and 19 and Requests for Production Nos. 25, 26, and 27.

PLAINTIFF'S MOTION FOR SANCTIONS - 6
2:19-cv-445 RSL

BEAN LAW GROUP
2200 6TH Ave, Ste 500
Seattle, WA 98121
(206) 522-0618

      identified, please include the amount of revenue it generated for Tech Mahindra in fiscal years 2016 and 2017.

      **SUPPLEMENTAL ANSWER:** Defendant incorporates all previously stated objections to Interrogatory No. 18. Subject to and without waiving its objections, *see* Supplemental Response to Request for Production No. 24. Defendant further states, pursuant to Rule 33(d), that information responsive to Interrogatory No. 18 can be derived from documents produced, including: TM39385-TM38763.

(The other responses are compiled in a streamlined format in Appendix A as well as in their original format in Fenton Ex. G.)

      TMA refuses to provide basic information to determine whether the Houlihan contract was a "new pillar" or a "large deal." TMA's repeated reference to the same documents is unhelpful because none of these documents answer the questions. In brief, the documents do <u>not</u> contain any of the requested information, such as the following:

- Whether the other contracts produced are in the same "pillar" as Houlihan.
- Information about revenue earned on these other contracts.
- Identification of who made the decision as to whether Houlihan was a "large deal" or if Llera would qualify for an incentive.
- Which "pillar" TMA designated for the contracts;
- TMA's definition of "pillar". (In fact, the word "pillar" never appears in any of the 379 identified pages).
- Who actually worked on the projects or who made determinations about how the projects would be categorized. (The only names are the signees of the contracts.)

Upon careful review of the documents, Llera's counsel cannot find any responsive documents for any of these discovery requests within those 379 pages. (Fenton Decl. ¶¶ 10-11.) In short these contracts are unresponsive and unhelpful. The relevant documents would be TMA's internal policies regarding pillar classification or its internal communications about whether certain transactions fit into specific pillars. (Fenton Decl. ¶ 11.)

      TMA's own witness testified that such information would be found in TMA's records. Sandeep Thawani's deposition testimony states:

PLAINTIFF'S MOTION FOR SANCTIONS - 7
2:19-cv-445 RSL

BEAN LAW GROUP
2200 6TH Ave, Ste 500
Seattle, WA 98121
(206) 522-0618

> *Q:     Okay. And is it ever documented where a particular contract falls within a pillar?*
>
> *A:     It is within internal systems, I believe, yes.*
>
> *Q:     So where would you look to find a document that would identify the supply chain contract to be within a particular pillar?*
>
> *A:     … I understand it is tagged and documented in internal systems where purchase, order, contracts, et cetera, are tracked.*

(Thawani Dep. at 110:20-111:20.). TMA has failed to produce the documents referenced by Thawani. To put it simply, TMA could have responded that Thawani was mistaken and that that no responsive documents exist. Instead, it sent plaintiff's counsel on a "wild goose chase" through 400 pages of irrelevant contracts. Sanctions are warranted for TMA's ongoing failure to provide critical information relating to its own "pillar" policy.

TMA has asserted that Houlihan was <u>not</u> a new pillar. Llera must be able to conduct discovery into the meaning of and application of TMA's internal "pillar" policy.

Llera has no option but to obtain this information from TMA, as it is a proprietary term of art used by TMA. (As opposed to a term such as EBITDA, which has an industry standard meaning.) TMA should not be allowed to create an issue of fact by playing "keep away" with all of the critical evidence. TMA's obfuscation is prejudicial to Llera. As a remedial sanction, Llera requests that the Court simply remove the dispute from this case, and deem it established that Houlihan was a "new pillar". This is not excessively punitive given that a TMA speaking agent testified that Houlihan *was* a new pillar of business on the T-Mobile account. (Asnani Dep. 42:4-12) ("It's a new pillar of the account… because Houlihan is part of ▮▮▮▮▮ ▮▮▮▮▮, the ▮▮▮▮▮ pillar for the company.") TMA must simply stop the charade of claiming that its own witness was mistaken.

**C.     Other discovery responses are insufficient or unexplained.**

Additionally, TMA has refused to provide clear responses to discovery requests despite the Courts orders and repeated requests from Llera's counsel. TMA has obfuscated by stating that the documents produced represent all that could be located after a reasonable search, but

PLAINTIFF'S MOTION FOR SANCTIONS - 8
2:19-cv-445 RSL

BEAN LAW GROUP
2200 6TH Ave, Ste 500
Seattle, WA 98121
(206) 522-0618

with a confusing caveat – that Llera cannot conclude that (1) there *were never* any other responsive documents beyond what was produced, or (2) that there *were* responsive documents beyond what was produced, but that they have been withheld, lost, or deleted. (Fenton Decl. ¶ 13.) This is obviously non-responsive. Llera has spent an inordinate amount of time trying to get a straight answer.

It is difficult to know the appropriate sanction for this evasiveness since we cannot know the extent of the prejudice because we do not know whether TMA destroyed the documents or whether they exist somewhere that TMA has not yet searched. TMA refuses to give a straight answer. Llera's efforts to prepare for trial are thwarted by TMA's continuing gamesmanship.

**Request for Production No. 15, regarding other complaints of discrimination and unpaid wages.** (*See* ECF #99, pp 3-4.) This request seeks production of communications sent to TMA by or on behalf of any current or former TMA employee raising concerns relating to race discrimination or failure to pay wages since January 1, 2015. TMA objected and produced no documents. The Court ordered TMA to response to the request on June 11, 2021. Seven months later, on December 29, 2021, TMA reiterated its prior objections with new objections, which are both untimely and baseless:

> Defendant incorporates all previously stated objections to Request for Production 15. Defendant further objects to this request to the extent [it] would require Defendant to produce documents which are publicly available and thus equally available to Plaintiff.

(Fenton Ex. A, pp 10-11.) TMA's *communications* with these potential comparators or their counsel <u>are not publicly available</u>. Llera's counsel raised this concern on January 4, 2022, and reminded TMA that the Court already ordered it to comply with this request. (Fenton Ex. B.)

After that was made clear to TMA, it produced a second supplemental answer on January 7, 2022:

> Defendant has engaged in an ongoing, reasonable, and good faith search for responsive information or records. To date, Defendant has not identified any responsive documents that are not protected from disclosure by the attorney-client

PLAINTIFF'S MOTION FOR SANCTIONS - 9
2:19-cv-445 RSL

BEAN LAW GROUP
2200 6TH Ave, Ste 500
Seattle, WA 98121
(206) 522-0618

privilege, the attorney work product doctrine, and/or other bases for asserting confidentiality.

(Fenton Ex. D, p 10.) This is baffling because communications with an adverse third party, like another employee with a grievance/complaint, are not privileged. Further, no privilege log was produced. During the January 18 conference, Llera's counsel asked about non-privileged communications. The response was that none had been located *yet*. (Fenton Decl. ¶ 6.) TMA is playing a game of "whack-a-mole". As soon as Llera's counsel points out the fallacy of an objection, TMA pops up with a new reason it cannot respond. TMA's suggestion that it has not located documents "yet" causes counsel to question whether it has been searching for documents since the Courts Order.

**Request for Production No. 28, documents regarding Mike Paquette**. (*See* ECF #101, pp 7-9.) Paquette is another white employee who, according to Sandeep Thawani, was brought on to the Houlihan deal for "diversity" purposes – to show "some salt in their predominantly pepper complexion". (Fenton Ex. H.) Because other TMA witnesses deny this, Llera has asked for documents relating to the decision to add Paquette. TMA has only produced a three-page "consultancy agreement," a single email thread in which Paquette was a recipient, and a single email thread *regarding* Paquette.[7] There is only a single email from the Houlihan pursuit team where Paquette was a recipient, and it was *after* the meeting with T-Mobile. The most inculpatory evidence, the "salt and pepper" email, was not produced by TMA. It actually found by Llera and produced by her. If Llera had to rely on TMA, this document would not have been found. We believe that similar emails exist that TMA has either destroyed, not looked for, or ignored. TMA should not be allowed to argue that that Paquette was brought in for any reason other than to "add some salt to their pepper" as stated in that email. TMA has provided no documents at all to support any other conclusion (such as Paquette's skills or experiences to justify bringing him onto the team at the Eleventh Hour.).

---

[7] TMA also produced presentation materials regarding the TMA organizational structure where Paquette is mentioned on one page, but not in the context of T-Mobile. (Fenton Decl. ¶ 14.)

PLAINTIFF'S MOTION FOR SANCTIONS - 10
2:19-cv-445 RSL

BEAN LAW GROUP
2200 6TH Ave, Ste 500
Seattle, WA 98121
(206) 522-0618

**Request for Production No. 31 (Fifth Set), documents regarding Llera's HUB Sales inquiry with reference number INC000004446020**. (*See* ECF #102, pp 7-8.) After the Houlihan deal was closed, Llera repeatedly asked about her incentive payment (commission). Her inquiry was forwarded to HUB Sales, who then acknowledged the query and gave her a unique reference number. (Fenton Ex. I.) Plaintiff then asked for all documents relating to that reference number. When first responding, TMA objected and did not perform any search. The Court overruled TMA's objections to the request on June 29, 2021. When TMA finally served its supplemental response to this request on December 29, 2021, the entire response was limited to:

> Defendant incorporates all previously stated objections to Requests for Production 31. Subject to and without waiving its objections, after conducting an additional search, Defendant has not located any additional responsive documents.

(Fenton Ex. A, p 19) (emphasis added). During a phone conference on January 18, 2022, TMA's counsel stated that the absence of documents was not an indication that Llera's inquiry was ignored, but documents may exist which are not within TMA's capabilities to retrieve and produce. (Fenton Decl. ¶ 13.) TMA does not explain why they could not be retrieved.

TMA must explain what happened to the documents. If they were deleted, TMA needs to say when that happened and why. If they were not deleted, TMA needs to explain why it cannot produce them. Or if TMA did not any follow up to Llera's inquiry, it needs to state that. The obfuscation needs to stop so we can have a trial with clear and sensible answers to questions.

**Request for Production Nos. 30 and 31 (Fourth Set), regarding the quarterly payout letters for Llera an d the other commission-based employees on the Houlihan pursuit.** (*See* ECF #101, pp 6-7.) Per the terms of the applicable incentive plan, TMA employees are entitled to notices of their earned incentive payments no later than 90 days after the end of a quarter. (Fenton Ex. J, p 14.) This was further confirmed by Nitin Mohan, who said that everyone gets a quarterly payout letter with the amount of their incentive, even if it is zero. (Mohan Dep. 116:20-117:1.) (TMA initially objected and pointed to a previously produced copy of an internal

PLAINTIFF'S MOTION FOR SANCTIONS - 11
2:19-cv-445 RSL

BEAN LAW GROUP
2200 6TH Ave, Ste 500
Seattle, WA 98121
(206) 522-0618

spreadsheet that was clearly *not* what was identified by Mohan.)  (Fenton Decl. ¶ 15.)  This Court rejected those objections on June 21, 2021.

On December 29, 2021, TMA finally provided a supplemental response, which stated:

> Defendant incorporated all previously stated objections to Request for Production 30.  Subject to and without waiving its objections, after conducting an additional reasonable search, Defendant has not located any responsive documents.

(Fenton Ex. A, p 18.)  (TMA's supplemental response to Request No. 31 is identical.)  TMA's counsel refused to say whether the documents were destroyed, whether the documents never existed—that Mohan's testimony was mistaken, or provide any other explanation for why this large tech company is unable to provide commission statements.  (Fenton Decl. ¶ 15.)

So what happened to the documents?  If they were deleted, TMA needs to say when and how that happened.  If they were not deleted, TMA needs to explain why it cannot produce or "retrieve" them.

**Requests for Production No. 33, regarding documents showing the dates when revenue was collected from T-Mobile on the Houlihan project.**  (ECF #102, p. 10.)  There should be no difficulty in gathering the documents showing when TMA collected revenue from the customer on the Houlihan project.  Banks meticulously tracking payments received in regular statements for customers.  In responding to this particular Request for Production, TMA has provided only a reference to a non-responsive interrogatory answer.  (Fenton Ex. G.)

To be clear, TMA *has* previously produced an Excel spreadsheet containing what appears to be quarterly revenue amounts.  (Fenton Decl. ¶ 16.)  Nonetheless, Llera is entitled to the underlying records, not just a spread sheet containing an opaque summary of what the actual business records might establish.

Llera believes that sanctions are warranted for all of the issues discussed above in Section C.  However, the nature of TMA's responses and subsequent positions during follow up conference calls makes it difficult to even understand what, if anything, happened to the responsive documents.  It is possible that an adverse inference instruction may be appropriate for

PLAINTIFF'S MOTION FOR SANCTIONS - 12
2:19-cv-445 RSL

BEAN LAW GROUP
2200 6TH Ave, Ste 500
Seattle, WA 98121
(206) 522-0618

some of these matters, or striking of certain defense claims, or perhaps the Court will deem a monetary sanction to be necessary. Regardless, some sort of response is called for.

### V.   CONCLUSION

TMA's continued delay in discovery is severely prejudicing Llera's ability to prosecute her case, causing unwarranted delays, and expenditure of attorney's fees. Therefore, the Court should grant Llera's motion for sanctions, as allowed under FRCP 37(b).[8]

DATED: this *27th* day of January, 2022:

BEAN LAW GROUP

*s/Cody Fenton-Robertson*
Matthew J. Bean, WSBA No. 23221
Cody Fenton-Robertson, WSBA No. 47879
Attorneys for Plaintiff

LAW OFFICES OF ALEX J. HIGGINS

*s/Alex J. Higgins*
Alex J. Higgins, WSBA No. 20868
Attorney for Plaintiff

---

[8] Just as Llera did not seek any monetary sanctions during the various discovery motions predating the present motion, she does not specifically seek monetary sanctions in this motion either. However, if this Court deems that the monetary sanctions called for under FRCP 37(b)(2)(C) are mandatory under the present circumstances, Llera will file a supplementary declaration containing an itemization of her reasonable attorney's fees on the present motion.

PLAINTIFF'S MOTION FOR SANCTIONS - 13
2:19-cv-445 RSL

BEAN LAW GROUP
2200 6TH Ave, Ste 500
Seattle, WA 98121
(206) 522-0618